UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEDRO VALENTIN, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 15-12831-LTS |
| SEAN MEDEIROS, | ) |
| Respondent. | ) |

ORDER ON RESPONDENT'S MOTION TO DISMISS (DOC. NO. 16)

November 24, 2015

SOROKIN, J.

Petitioner Pedro Valentin, a prisoner at the Massachusetts Correctional Institution in Norfolk, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Valentin filed his federal claims two decades after the conviction and sentence he wishes to challenge became final.  For the following reasons, his petition is DISMISSED as untimely.

I.  BACKGROUND

On May 15, 1992, following a jury trial in Suffolk County Superior Court, Valentin was convicted of first-degree murder and received a life sentence.  See Doc. No. 1 at 2-3; Commonwealth v. Valentin, 649 N.E.2d 1079, 1080 (Mass. 1995).  The charge related to the death of an individual who had stolen narcotics from an associate of Valentin's brother. Valentin, 649 N.E.2d at 1080-81.  The evidence at trial suggested Valentin's brother shot the individual twice, Valentin stomped on his head and said "[d]ie, motherfucker," then the two

brothers fled the scene.  Id.  Valentin was charged on a "joint venture" theory and convicted of murder "by reason of deliberate premeditation."  Id. at 1080.

Valentin appealed; the Supreme Judicial Court ("SJC") affirmed his conviction and sentence on May 8, 1995.  Id. at 1079-80; Doc. No. 1 at 3.  For more than fifteen years following the SJC's direct appeal decision, no further litigation occurred related to Valentin's conviction or sentence.  See Doc. No. 16-1 at 3.

Then, on January 6, 2012, acting through new counsel, Valentin filed a motion for a new trial in the Superior Court.  Id.; Doc. No. 1 at 4, 15.  That motion was denied without a hearing on February 6, 2013.  Doc. No. 1 at 7; Doc. No. 16-1 at 3.  Valentin appealed, and a single justice of the SJC allowed his application for leave to appeal in part, limiting review by the full SJC to two "new and substantial" allegations of counsel ineffectiveness raised by Valentin's post-conviction motion.  Commonwealth v. Valentin, 23 N.E.3d 61, 64 (Mass. 2012); Doc. No. 1-1 at 1-3.  On those issues, however, the full SJC rejected Valentin's claims and affirmed the trial court's denial of post-conviction relief.  Valentin, 23 N.E.2d at 64-65.  The SJC's decision was issued on December 8, 2014.  Id. at 61.

About six months later, Valentin filed his federal habeas petition.  See Doc. No. 1 at 1, 17 (showing Valentin signed the petition on June 23rd and dated his cover letter June 24th, and that the petition was docketed on June 26th).[1]  In his petition, Valentin challenges the "absence of trial counsel at a critical stage of the proceeding," a lack of consent to "stand-in counsel" and no waiver of lead counsel's presence, and ineffectiveness of trial and appellate counsel for failure to impeach a witness regarding Valentin's statement at the time of the shooting.  Id. at 6-10.

---

[1] The Court need not select among these different dates and determine the precise filing date, as none of the three relevant dates in June 2015 would render the petition timely.

The respondent has moved to dismiss Valentin's petition, arguing it is untimely. Doc. No. 16. Valentin opposes the motion, claiming "he did not sit around on his hands for 18 years before filing his writ of habeas corpus." Doc. No. 22 at 2. According to Valentin, he began "formulating a post-conviction motion ra[i]sing trial counsel's ineffective assistance," wrote a letter to the Committee for Public Counsel Service ("CPCS") requesting assistance, and sent CPCS a draft motion for review.[2] Id. Valentin asserts that he then waited while it took CPCS attorneys a number of years to review his case, assign an attorney, and file a post-conviction motion. Id.; see Doc. No. 1 at 6. He further invokes the Supreme Court's decision in Martinez v. Ryan, 132 S. Ct. 1309 (2012), which he claims "carved out a narrow exception to the cause and prejudice procedural default rule," such that petitions like Valentin's are rendered "timely." Doc. No. 1 at 15-16; see Doc. No. 22 at 2-5.

Unfortunately for Valentin, the law does not support his view of his petition's timeliness, nor his interpretation of Martinez.

## II.   DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year period of limitation on applications for writs of habeas corpus. It provides that such period "shall run from the latest of":

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme

---

[2] The Court notes Valentin has not specified when he took these actions, nor has he submitted documents reflecting the content or timing of his communications with CPCS.

3

>Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Statutory tolling of the limitation period is permitted for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  § 2244(d)(2).

Valentin's judgment of sentence became final on August 6, 1995, when the ninety-day period for seeking certiorari in the United States Supreme Court expired following the SJC's resolution of his direct appeal.  See Gonzalez v. Thaler, 132 S. Ct. 641, 653-54 (2012) (holding that where Supreme Court review is not sought, conviction becomes final for federal habeas purposes when the time for seeking certiorari expires); Sup. Ct. R. 13(1).  Because Valentin's conviction became final before AEDPA was enacted, he is entitled to a "grace period," pursuant to which the period for filing his federal claims did not begin until AEDPA's effective date of April 24, 1996.  See Herbert v. Dickhaut, 695 F.3d 105, 108 (1st Cir. 2012) (citing Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999) (per curiam)).  As such, absent tolling or a statutory exception, Valentin was required to file his federal petition on or before April 24, 1997.[3]  Id. Because Valentin's petition was filed more than eighteen years later, it is untimely unless he qualifies for an alternative start date for his federal limitation period, or he establishes the limitation period was tolled.

Valentin has not claimed that any state action impeded his ability to file a timely federal habeas petition,[4] and his challenges to his trial counsel's actions do not rely on newly recognized

---

[3] Valentin acknowledges that the one-year limitation period expired long ago, Doc. No. 1 at 6, 15, but urges the Court to toll the period based on equitable considerations and Martinez, Doc. No. 1 at 15-16.

[4] To the extent he claims the allegedly lengthy screening process performed by CPCS impeded his ability to make a timely filing, the actions of Valentin's counsel are attributable to him, not to

4

constitutional rights or recently discovered factual predicates.[5] His petition, therefore, does not trigger a start date for his federal limitation period other than AEDPA's effective date under the applicable "grace period." Herbert, 695 F.3d at 108; see § 2244(d)(1)(B)-(D).

Moreover, Valentin has not established that his limitation period was subject to statutory tolling, as the only state post-conviction proceedings he pursued were instituted many years after the federal limitation period already had expired. See Delaney v. Matesanz, 264 F.3d 7, 11 (1st Cir. 2001) (concluding the statutory tolling provision is "no help" to petitioner where the relevant state filing occurred after the expiration of the one-year federal limitation period). Accordingly, those proceedings could not have operated as a basis for tolling or otherwise reviving a long-expired limitation period under AEDPA.[6]

The only remaining avenue for saving Valentin's untimely petition from dismissal is the doctrine of equitable tolling. A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

---

the Commonwealth. See Holland v. Florida, 560 U.S. 631, 656 (2010) (explaining that "the mistakes of counsel are constructively attributable to the client, at least in the postconviction context").

[5] Valentin has not relied upon any Supreme Court decisions, issued within the year before his petition was filed, in which that Court recognized any new constitutional rights. Indeed, Martinez, upon which Valentin relies in an effort to avoid dismissal here, was decided more than three years before he filed his federal petition.

Moreover, his submissions rely entirely on facts known to him at or near the time of his trial. See generally Doc. No. 1 (citing lead counsel's absence when the trial court reinstructed the jury in response to two questions asked during deliberations, stand-in counsel's lack of involvement in the case, and discrepancies between a prosecution witness's trial testimony and prior statements to police with respect to Valentin's comment immediately following the shooting incident).

[6] As Valentin notes, unlike many other states, Massachusetts places no time limits on the filing of post-conviction motions in state court. See Doc. No. 22 at 3 (citing Mass. R. Crim. P. 30(b)). Although this fact is irrelevant for purposes of interpreting and applying the relevant federal limitation period, it certainly operated to Valentin's benefit by ensuring that his post-conviction claims were heard on the merits by at least one reviewing court (the SJC).

5

stood in his way and prevented timely filing.'" Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); accord Drew v. MacEachern, 620 F.3d 16, 23 (1st Cir. 2010). "[E]quitable tolling 'is the exception rather than the rule.'" Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010) (quoting Delaney, 264 F.3d at 14); see Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007) (noting equitable tolling is only "rare[ly]" appropriate).

The diligence standard required by the doctrine of equitable tolling is "reasonable diligence," not "maximum feasible diligence." Holland, 560 U.S. at 653 (internal citations and quotations omitted). Extraordinary circumstances, for equitable tolling purposes, require more than "'garden variety' or 'excusable neglect,'" id. at 651, but less than gross negligence coupled with "'bad faith, dishonesty, divided loyalty, mental impairment, or so forth on the lawyer's part,'" id. at 649 (quoting Holland v. Florida, 539 F.3d 1334, 1339 (11th Cir. 2008), and its "rigid" extraordinary circumstances standard). As the petitioner, Valentin "bears the burden of establishing a basis for equitable tolling." Trapp, 479 F.3d at 59.

Valentin has failed to identify any circumstances warranting equitable tolling here, and the Court's review of the parties' submissions has uncovered none. In fact, Valentin's submissions make it clear that he was aware of his ineffectiveness claims and began working on pleadings presenting them many years before his state collateral proceedings were filed, but that he elected to wait to file the claims until CPCS completed its apparently lengthy review process.[7]

---

[7] Valentin's description of the timeline related to the development of his post-conviction claims appears to have significant gaps. For example, he speaks hypothetically of what might have happened had he filed the post-conviction claims he formulated on his own behalf "in 1997, without counsel," Doc. No. 22 at 5, and discusses a seven-year screening process by CPCS, id. at 2. But these facts, if accepted, do not explain why his motion for a new trial was not filed in state court until 2012 – fifteen years after he posits he could have filed a pro se motion. Even accepting that seven of those years are attributable to CPCS's review of his case, Valentin offers no explanation for the remaining eight-year delay.

See Doc. No. 22 at 5 (suggesting he chose not to file a pro se motion for a new trial in 1997, when it might have tolled a still-ticking federal limitation period, because "his claims would have most certainly been proce[]durally defaulted" at that time).  He does not allege that his post-conviction counsel was ineffective or even negligent for the manner in which it prepared or presented his motion for a new trial, nor does he assign fault to his post-conviction counsel for his late federal filing.  See id. at 3 (blaming appellate counsel for failing to raise counsel ineffectiveness claims on direct review, but insisting "he filed his post-conviction motion when it was ripe to do so").  Even if he made such assertions, the record is devoid of evidence that would permit the Court to credit them and deem the actions of CPCS an "extraordinary circumstance" that "stood in [Valentin's] way and prevented timely filing."  Pace, 544 U.S. at 418; see Trapp, 479 F.3d at 59 (placing on petitioner the burden of proving prerequisites for equitable tolling).

Furthermore, Valentin's reliance on Martinez is misplaced.  He describes Martinez as containing a "holding on equitable tolling" that, in this case, "shows 'cause' for the defaulted claims, and, therefore, defeats the AEDPA's one-year statute of limitations," rendering his federal petition timely.  Doc. No. 22 at 5.  Martinez, however, does no such thing.  See 132 S. Ct. at 1313 (describing the "dispositive" question as "whether a federal habeas court may *excuse a procedural default of an ineffective-assistance claim* when the claim was not properly presented in state court *due to an attorney's errors in an initial-review collateral proceeding*" (emphasis added)).  Martinez did not present questions of timeliness under the AEDPA's one-year limitation period, nor did it involve application of the doctrine of equitable tolling.[8]  Conversely,

---

[8] Valentin's assertion that Martinez's federal habeas petition was untimely (and his implication that this transforms Martinez into a decision about the AEDPA's limitation provision and not just one related to procedural default) is incorrect.  See Doc. No. 22 at 5 n.1.  As earlier decisions examining Martinez's petition make clear, his federal claims were timely filed.  See Martinez v. Schriro, No. 08-785, 2008 WL 5220909, at *6-*8 (D. Ariz. Dec. 12, 2008) (describing the

7

Valentin's case does not present a question of procedural default or assertions of attorney error "in an initial-review collateral proceeding." Accordingly, Martinez provides no basis for excusing the substantial untimeliness of Valentin's habeas petition.

In sum, there is simply no basis on the record before the Court to conclude that Valentin was justified in waiting nearly two decades before endeavoring to challenge his trial and appellate counsel's performance in either state or federal court, and he has offered no reasonable or legally significant excuse for the extreme tardiness of his federal claims. Cf. Trapp, 479 F.3d at 60 ("In applying the equitable tolling doctrine, an important factor is the reason for the late filing."). Under these circumstances, Valentin has not satisfied his burden of demonstrating that he was reasonably diligent or that extraordinary circumstances warrant invocation of the doctrine of equitable tolling. As such, the time-limiting provisions of AEDPA require that Valentin's petition be dismissed with prejudice.

III.    CONCLUSION

For the foregoing reasons, the respondent's motion to dismiss (Doc. No. 16) is ALLOWED, and Valentin's petition (Doc. No. 1) is DISMISSED with prejudice.[9]

                                          SO ORDERED.

                                           /s/ Leo T. Sorokin
                                          Leo T. Sorokin
                                          United States District Judge

---

procedural history of Martinez's state court proceedings, where his direct appeal concluded in September 2004, state post-conviction proceedings began a month later and continued until May 2007, and his federal habeas petition was filed eleven months thereafter).

[9] Because "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), and based on the circumstances described above, no certificate of appealability shall issue. The considerable untimeliness of Valentin's petition, coupled with his failure to establish his own diligence or the sort of extraordinary circumstances that would justify excusing that untimeliness, permits no disposition besides dismissal.